Filed Jan. 19, 1892.

---

No. 410.

## HUNT v. THE STATE.

CRUELTY TO ANIMALS.— *What Constitutes.*—Under section 2101, R. S. 1881, providing that whoever "cruelly beats or needlessly mutilates or kills any animal" shall be fined, etc., it is the needless killing of the animal, and not the cruel killing, that constitutes the offence.

SAME.—*Intent.*—If one kills an animal for the honest purpose of protecting his person or property, and the circumstances are of such a character as to reasonably justify the belief that the measure is necessary to that end, the act is not in violation of the above statute, though it turned out that the apprehensions were in fact groundless, and the killing not necessary.

From the Sullivan Circuit Court.

*J. S. Bays* and *W. S. Maple,* for appellant.

*O. B. Morris,* for the State.

CRUMPACKER, J.—This is a prosecution under the statute for the prevention of cruelty to animals. The affidavit charges that on the 10th day of December, 1890, in Sullivan county, Indiana, Arthur Hunt did then and there " unlawfully and cruelly shoot and injure a certain dog," the, property of one Clinton Bicknell, " by then and there shooting said dog with leaden shot and killing him."

The trial resulted in a conviction of the defendant, and he appeals.

No question is raised respecting the sufficiency of the affi-

davit, so we intimate no opinion thereon. But it is con-
tended that the evidence does not support the finding.

The evidence showed that appellant lived upon his father's
farm, for whom he worked, and on the 10th day of Decem-
ber, 1890, he was hunting in a tract of timber on such farm,
which was enclosed with other land used for pasture, and in
which enclosure appellant's father had a drove of sheep.
Upon the same day Clinton Bicknell and another were
hunting foxes with six hounds and other proper accoutre-
ments, and, when they came near the enclosure in which ap-
pellant was hunting, the hounds discovered a fox trail which
led across such enclosure, and which they followed on the
run. When they entered the enclosure where the sheep
were pasturing, the sheep became very much frightened, and
started towards the woods as fast as they could run, with
the hounds after them. They were about twenty-five feet
behind the sheep when they entered the woods. Appellant
had no knowledge of the hunters or of the chase of the
hounds, until he was startled by the sheep running in a
greatly excited condition, with the hounds closely following
at their heels. Several sheep had recently been killed in the
enclosure by dogs, and appellant supposed that the hounds
were chasing the sheep, and for the purpose of protecting
them he shot one of the hounds, and it fell dead instantly.
Bicknell and his companion were about a half mile away at
the time, and were not in sight of appellant. The shooting
was in Sullivan county and on the date stated in the affi-
davit, and the hound was the property of Bicknell. This
was the substance of the evidence.

Section 2101 provides, among other things, that who-
ever " cruelly beats or needlessly mutilates or kills any ani-
mal " shall be fined, etc. Counsel for the State are in error
in the assumption that the cruel killing of an animal consti-
tutes an offense under the statute. The adjective " cruelly "
qualifies " beats," and " needlessly " qualifies " mutilates or
kills," so the simple charge of a *cruel* killing constitutes no

offence. The point is not made that there is a possible vari-
ance between the evidence and the charge, so we need not
consider that question, but as the affidavit charges the *killing*
of the animal, and the evidence sustains the charge to that
extent, we shall, in the discussion of the evidence, treat the
.charge as if it were for a *needless* killing, the only kind pun-
ishable.

This statute was evidently designed to inculcate a humane
regard for the rights and feelings of the brute creation by
reproving evil and indifferent tendencies in human nature
in its intercourse with animals, but not to limit man's proper
dominion " over the fish of the sea, and over the fowl of the
air, and over every living thing that moveth upon the earth."
Both the protection of the animal and the elevation and re-
finement of the man seem to be the end of the law. If one
destroys the life of an animal for the honest purpose of pro-
tecting his person or property, and the circumstances are of
such a character as to reasonably justify the belief that the
measure is necessary to that end, the act would not be in
violation of the statute under consideration, though it turned
out that the apprehensions were in fact groundless, and the
destruction of life not necessary. In the killing of the dog
in question the appellant acted for the purpose of protecting
the sheep, and there can be no doubt that his action was jus-
tified by the appearances surrounding him. Any reasona-
ble person, situated as he was, would have been moved to
have done the same thing. If he is liable criminally because
in fact the dogs were following a fox trail, and had no mur-
derous designs against the sheep, a man who would kill a
dog to protect life and property, which had marked symp-
toms of hydrophobia sufficient to justify the belief that it
was so afflicted, would be subject to punishment under the
statute if 'it developed, upon a scientific examination, that
the dog was not so affected. Such an interpretation would
subvert the purposes of the law, and convert it into an ene-

my to mankind instead of an agency to promote comfort and refinement.

To justify a conviction there must be present a malevolent purpose, or a spirit of wickedness or cruel wantonness, or a reckless disregard of the rights and feelings of the brute creation.

Arkansas has a statute similar to ours, and the Supreme Court of that State, in the case of *Grise* v. *State,* 37 Ark. 456, gave it substantially the same interpretation. That prosecution was for needlessly killing a hog. We quote from the syllabus, as it correctly states the position of the court: " The term *needlessly,* in the act of 1879, ' For the prevention of cruelty to animals," has no reference to the lawfulness or unlawfulness of the act of killing or mutilating, except as the statute makes it unlawful *as* needless ; nor is it to be construed as characterizing an act which might, by care, have been avoided. It simply means an act done without any useful motive, in a spirit of wanton cruelty, or for the mere pleasure of destruction."

In a prosecution for *cruelly* killing a hog, the Supreme Court of Mississippi, in the case of *Stephens* v. *State,* 65 Miss. 329, said : " The motive with which the act was done is the test as to whether it was criminal or not. Unless appellant was actuated by a spirit of cruelty, or a disposition to inflict unnecessary pain and suffering on animals, he was not guilty of the offence charged. He may have committed a trespass for which he is liable in a civil suit, but if his purpose and intent was to protect his crop from depredation, he did not violate the statute under which he was indicted."

The same principle characterizes the decisions of other courts upon the subject. *Thomas* v. *State,* 14 Tex. App. 200 ; *State* v. *Bogardus,* 4 Mo. App. 215 ; *Hodge* v. *State,* 11 Lea. 528 ; *Commmonwealth* v. *McClellan,* 101 Mass. 34 ; 12 Criminal Law Mag. 396.

It is not necessary that the evil motive be *actual,* to justify a conviction, but if the act be of such a character as to

evince an absence of any proper regard for animal life or feelings, the necessary motive will be supplied by construction.

The evidence did not warrant a conviction.

The judgment is reversed.

Filed Jan. 20, 1892.