Corrine L. PETERSEN, et al.,
Appellants,

v.

Timothy Russell KIDD, et al.,
Respondents.

No. C2–86–1051.

Court of Appeals of Minnesota.

Feb. 10, 1987.

Charles Giannetto, Michaels, Seager, Rosenblad & Arnold, Rochester, for appellants.

James R. Carlson, Muir, Heuel & Carlson, Rochester, for respondents.

Heard, considered and decided by NIERENGARTEN, P.J., and PARKER and CRIPPEN, JJ.

## OPINION

NIERENGARTEN, Judge.

This appeal is from an order denying a motion for a new trial, amended findings or judgment notwithstanding the verdict. The jury found appellant Corrine Petersen did not prove permanent injury resulting from an automobile accident with respondent Timothy Kidd, and was entitled to damages of $8,000 for a "whiplash" injury. We affirm.

## FACTS

In 1982 Timothy Kidd attempted a left-hand turn in front of the Petersen car and the cars collided. Petersen claims a permanent injury to her neck and back resulting from the collision.

Petersen, who lives on a farm, testified that after the accident she could no longer drive a tractor or a truck, or do many of the household chores. Prior to the accident, Petersen drove a truck and did book work for a family fertilizer business, which she testified had to be terminated because she could no longer drive the truck without pain. In 1983 Petersen applied for a mail carrier position and indicated a "whiplash" injury from the 1982 accident but no "stiffness of neck," or "back injury or chronic back pain." She also had a history of three accidents and falls in 1984 and one in 1985.

Petersen's treating chiropractor diagnosed (1) whiplash-type injury to the neck, involving muscle strain and subluxation, or a small movement of the cervical vertebrae; and (2) a lumbar, or lower back syndrome, including ligament strain, disc degeneration and subluxation. The lumbar syndrome was in part congenital. He found a permanent partial disability of 15%, 5% pre-existing the accident.

An orthopedic surgeon called by Kidd estimated Petersen had a 7% permanent impairment but felt Petersen should "live within her troubles" and felt that "on-demand" chiropractic treatment was reinforcing her problems. He stated that Petersen had an MMPI personality profile for hysteria, and was apt to exaggerate her troubles. He stated she "stands a chance of having good long-term relief," but not a cure.

A Mayo Clinic internist, after examining Petersen and reading reports from a neurologist who found no evidence of a spinal cord or nerve root problem, and an orthopedic surgeon who noted the cervical strain and subluxation, found no permanent im-

pairment, agreeing that Petersen's injury would eventually heal.

Petersen incurred $3,714.60 in medical expenses, paid by the no-fault insurer and deductible from any recovery, and wage loss of $3,691. The Petersens claimed to have hired farm help at $4,700 per year since the accident. Petersen testified she would have to hire household help when her daughter left home which would add up to $40,000 over her lifetime.

After apportioning negligence 40% to Petersen and 60% to Kidd, the jury found Petersen had suffered no permanent injury. It awarded damages of $8,000 to Petersen and $3,000 to her husband for loss of consortium.

## ISSUE

Did the medical evidence require a finding of permanent injury?

## ANALYSIS

Petersen contends the finding of no permanent injury is without evidentiary support, being contrary to the expert testimony. She also claims an inadequate award of damages.

The granting of a new trial rests within the discretion of the trial court, which will be reversed only for a clear abuse of discretion. *City of Ogema v. Bevins,* 341 N.W.2d 298, 299 (Minn.Ct.App.1983). A new trial is to be granted for insufficient evidentiary support only when the verdict is so contrary to the preponderance of the evidence as to suggest jury bias or mistake. *Lamb v. Jordan,* 333 N.W.2d 852, 855–56 (Minn.1983).

### A. Permanent Injury

Petersen claims the jury's finding of no permanent injury disregarded the unimpeached and uncontradicted expert testimony of her chiropractor and the orthopedic surgeon called by Kidd. *See O'Leary v. Wangensteen,* 175 Minn. 368, 370–71, 221 N.W. 430, 431 (1928) (jury cannot disregard unimpeached and uncontradicted testimony unless improbable or inconsistent).

The expert testimony on permanent injury was not uncontradicted. The Mayo Clinic consultant testified there was no permanent impairment, based on the orthopedic surgeon's diagnosis. Consequently, the jury was not required to adopt the view of the other two medical experts. *See Rud v. Flood,* 385 N.W.2d 357, 360–61 (Minn.Ct.App.1986) (circumstantial evidence and cross-examination of plaintiff's experts sufficient to support verdict of no permanent injury).

The jury may have considered Petersen's history of accidents and falls in determining there was no causation between her present accident and whatever permanent disability she claims. The jury could also have considered Petersen's application for a mail carrier position less than a year after the accident, when she disclosed a "whiplash" injury, but claimed no neck or back injury or chronic pain.

### B. Inadequacy of Damages.

A new trial on damages will be ordered only where the verdict is so inadequate or excessive that it could only have been rendered out of passion or prejudice. *Seim v. Garavalia,* 306 N.W.2d 806, 813 (Minn.1981).

Petersen recovered her economic losses (medical expenses of $3,715.60 and wage loss of $3,691.00) resulting from the accident. Minn.Stat. § 65B.51, subd. 2 (1984). The jury award of $8,000.00, reduced by her percentage of fault, 40%, does not exceed the no-fault benefits paid; therefore, by the jury verdict she recovers nothing.

The jury's award exceeded the stipulated special damages which were disclosed to it. Therefore, the award was not inadequate on that account. *See Clark v. Johnson Brothers Construction,* 370 N.W.2d 896, 900 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Sept. 19, 1985). The jury, which found no permanent injury, was not required to accept Petersen's own testimony, especially without expert support, on her claimed items of future economic loss.

There was no conclusive medical testimony that Petersen could not work on the farm or in the home or business.

## DECISION

The jury's verdict of no permanent injury was not so contrary to the preponderance of the evidence, or the damages awarded so inadequate, as to require a new trial.

Affirmed.